# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINDA CASTILLO,<br><br>        Plaintiff,<br><br>   vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | 8:13CV103<br><br>ORDER |

    This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner).[1] Linda Castillo (Castillo) appeals the Commissioner's decision denying Castillo's application for disability benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401, *et seq.* and Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Castillo alleges she was disabled as of April 15, 2010, due to major depressive disorder without psychotic features, panic disorder without agoraphobia, dependent personality disorder, autoimmune thyroid disease, disorder of the lumbar spine, and osteoporosis. Castillo filed a brief (Filing No. 14) in support of this administrative appeal. The Commissioner filed the administrative record (AR.) (Filing No. 9) and a brief (Filing No. 21) in opposition of Castillo's appeal for benefits. Castillo filed a brief (Filing No. 22) in reply. After securing leave of court, the Commissioner filed a surreply brief (Filing No. 25).

## BACKGROUND

    On March 15, 2010, and April 26, 2010, Castillo filed applications for disability benefits and SSI alleging her disability began April 15, 2010 (AR. 74-76, 161-183). The Commissioner denied benefits initially and on reconsideration (AR. 74-76, 78, 101-104, 106-109). An administrative law judge (ALJ) held a hearing on November 28, 2011 (AR. 29-73). The ALJ received additional medical evidence after the hearing (AR. 12).

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(*c*). **See** Filing No. 13.

On January 23, 2012, the ALJ determined Castillo was not disabled as defined by the Act from April 15, 2010, through the date of decision (AR. 12-22). The Appeals Council denied Castillo's request for review on February 8, 2013 (AR. 1-6). Castillo now seeks judicial review of the ALJ's determination as it represents the final decision of the SSA Commissioner.

Castillo argues the Commissioner's decision should be reversed and benefits awarded because the ALJ improperly discounted the opinion of a treating physician, Joseph A. Wenzl, M.D. (Dr. Wenzl), when establishing Castillo's residual functional capacity and evaluating Castillo's symptoms and limitations. **See** Filing No. 14 - Brief p. 1. After reviewing the ALJ's decision, the parties' briefs, the record, and applicable law, the court finds the ALJ's ruling, that Castillo was not disabled, is supported by substantial evidence in the record as a whole.

## ADMINISTRATIVE RECORD

**A. Medical Records**

On May 22, 2007, Castillo sought treatment for a broken rib after sustaining an injury lifting a thirty-five to forty-pound box at work (AR. 309). In July 2007, Castillo, at age 37, underwent a bone density study resulting in a diagnosis of osteoporosis (AR. 161, 285). Castillo's primary care physician, Dr. Wenzl, indicated a bone density scan showed "significant deficiency with hip density at 1.02 standard deviations below peak mass and lumbar density at 2.33 standard deviation below peak mass" (AR. 285).[2] At that time she reported she had not had any back or hip pain (AR. 285).

On March 19, 2010, Castillo saw Dr. Wenzl, complaining of back pain made worse with activity in the past week to ten days (AR. 274). Castillo reported the pain was severe at times and drained her energy at work (AR. 274). Castillo did not notice any loss of strength in her extremities (AR. 274). Her back was tender, but she reported no pain with straight leg raises (AR. 274). Castillo's gait was somewhat slow but

---

[2] The score, or T-score, is a comparison to the peak bone mass of a gender-matched, healthy person (AR. 376). A score above one standard deviation below the mean (written -1.0) is considered normal with a low risk of fracture (AR. 376). A score from one standard deviation below the mean to 2.5 (between -1.0 and -2.5) indicates low bone density (osteopenia), with a moderate risk of fracture (AR. 376). A score below 2.5 standard deviations below the mean (written -2.5) indicates a high risk of fracture (osteoporosis) (AR. 376).

otherwise normal (AR. 274). Dr. Wenzl noted a decreased range of motion in Castillo's back and bone density studies indicated a history of osteopenia (AR. 274). Dr. Wenzl prescribed Evista to treat osteopenia with "borderline osteoporosis" and Tramadol, taking one to two 50 milligram doses every six hours as needed, for pain (AR. 274). Dr. Wenzl recommended a follow-up appointment in one week (AR. 274). On March 29, 2010, Castillo reported the pain medication did not help (AR. 274). Dr. Wenzl changed Castillo's pain medication to hydrocodone/acetaminophen 5/500 one to two tablets every four hours as needed and ordered thoracic and lumbar x-rays (AR. 274). March 29, 2010, back x-rays showed no evidence of fracture or subluxation (AR. 292-293).

On April 7, 2010, Castillo saw a physical therapist for an initial evaluation of her back pain (AR. 324-327). Castillo reported a gradual onset of back pain over two or three years with progressively worsening pain over the past two to three months (AR. 324). Castillo continued to work, reporting her duties included standing, twisting, and lifting up to 50 pounds (AR. 324). Castillo reported her pain was an eight of ten, on average, and activities aggravating her pain included lifting, prolonged standing and walking, and work-related tasks (AR. 324). The evaluator noted Castillo had "symptoms consistent with mechanical mid and low back pain secondary to possible postural deviations and diagnosis of osteoporosis/degenerative joint disease" (AR. 326).

In an August 16, 2010, response to a request for records for the period April 1, 2010, through August 12, 2010, Dr. Wenzl's office indicated Castillo had "no records for dates requested" (AR. 340-341).

On October 25, 2010, Castillo returned to Dr. Wenzl with complaints of severe low back pain (AR. 400-402). Dr. Wenzl noted Castillo denied weakness or numbness in her arms and legs (AR. 400). Castillo reported the pain, which she rated as an eight out of ten, did not improve with use of heat, rest, or medication (AR. 400). Castillo stated the symptoms were worsening over time and made worse by standing, sitting, lifting, bending, twisting, and walking down stairs (AR. 400). Dr. Wenzl noted an examination revealed tenderness and no warmth on the right side (AR. 402). Dr. Wenzl prescribed Tramadol, one tablet four times a day as needed, and recommended a follow-up appointment in two weeks (AR. 402).

On November 2, 2010, Dr. Wenzl completed a Physical Residual Functional Capacity Assessment Form (AR. 427). On the two page form, Dr. Wenzl indicated Castillo could sit, stand, and walk each for up to one hour over the course of a workday and could work no more than three hours each day (AR. 427). Dr. Wenzl opined Castillo could never lift items weighing more than ten pounds and could only occasionally lift items weighing less than ten pounds (AR. 427). Dr. Wenzl wrote Castillo's limitations existed since April 15, 2010, and were caused by her diagnosed condition of low back pain with osteoporosis (AR. 427).

On November 4, 2010, Castillo underwent a bone density scan (AR. 376-380). Castillo's lumbar spine score was -2.5 (AR. 376), the assessor indicated the score meant Castillo was at a high risk of fracture (AR. 376). Castillo's hip score was -0.9, in the normal range indicating low risk of fracture (AR. 376). From 2007 to 2009, Castillo's lumbar spine scores were -2.8, -2.9, and -2.3 (AR. 378). In the same period, Castillo's hip scores were -1.0, -1.0, and -0.9 (AR. 380).

On November 8, 2010, Castillo presented to Dr. Wenzl for a routine follow-up appointment (AR. 396-399). Castillo reported back, wrist, hip, and knee pain (AR. 396). Castillo reported no dizziness or limb weakness (AR. 196). Dr. Wenzl observed low back tenderness with a decreased range of motion and decreased sensations in the right side lower extremity (AR. 398). Dr. Wenzl prescribed hydrocodone/acetaminophen 10/650 one tablet every four to six hours as needed (AR. 398).

On October 10, 2011, Dr. Wenzl completed another Physical Residual Functional Capacity Assessment Form (AR. 420-421). Dr. Wenzl indicated that, due to low back pain and osteoporosis, Castillo could only sit or walk each for ten minutes at a time and could only stand for five minutes at a time (AR. 420). Dr. Wenzl opined Castillo could not lift items weighing more than five pounds (AR. 420). Dr. Wenzl checked "yes" when asked if these limitations were to be considered to exist since April 15, 2010 (AR. 421). Dr. Wenzl wrote the limitations were due to severe osteoporosis with lower back pain and weakness in the right leg (AR. 421). On the same day, Dr. Wenzl prescribed Castillo with a wheeled walker (AR. 426).

On October 31, 2011, Castillo returned to Dr. Wenzl for a follow-up appointment regarding back pain (AR. 436-439). Castillo reported she had been taking her

medication, which poorly controlled her pain symptoms (AR. 436). On examination, Castillo showed tenderness in her back and reduced range of motion in her arms (AR. 439).

In a December 12, 2011, letter, Dr. Wenzl gave his opinion Castillo had significant osteoporosis, documented in multiple bone density studies (AR. 446). Dr. Wenzl specifically relied upon an October 27, 2011, bone density scan showing Castillo's lumbar spine score was -2.5 and her hip score was -1.0 (AR. 446). Dr. Wenzl opined that although Castillo's hip scores were not in the osteoporotic range, her lumbar spine scores are consistent with a diagnosis of osteoporosis and place her at high risk for fractures (AR. 446). Dr. Wenzl reported Castillo took weekly medication and high doses of Vitamin D to decrease her risk of fractures (AR. 446). Dr. Wenzl wrote, "[Castillo] is able to do most of her self care needs, but she is not able to do even minimal housework" (AR. 446). Dr. Wenzl stated his belief Castillo is not suitable for any outside employment due to pain, "especially pain that is associated with being in a prolonged position of either standing or sitting" (AR. 446).

**B.    Administrative Hearing**

Castillo testified she was forty-one years old with a high school education at the time of the hearing (AR. 39). Castillo has been married three times with the last marriage ending in January 2011 (AR. 40). Castillo has five children ages 3, 6, 16, 19, and 21, with three of them living with her (AR. 40). Castillo's 19 year old daughter has an infant also living with them (AR. 41). Castillo's 16 year old son was in foster care, but planned to return to living with Castillo within a month of the hearing (AR. 41). Castillo's ex-husband was ordered to pay $730 child support for the youngest two children (AR. 41).

Castillo described her work history including working twelve years at Airlite Plastics as a production packer and print specialist, molding and printing plastic containers, until April 15, 2010 (AR. 43). Prior to that, Castillo worked at another plastic company as a packer of plastic containers (AR. 43). Castillo's production work required her to stand and lift up to fifty pounds (AR. 43-44).

5

In 2007, Castillo broke a rib while lifting a box at work (AR. 58). In June 2007, after a bone density test, Castillo was diagnosed with osteoporosis, which helped explain why lifting a box caused her rib to break (AR. 58). Castillo suffered pain at work when she lifted boxes or moved in certain ways, causing her back to crack or causing her to fall to the floor (AR. 59). In July 2007, Castillo learned she was pregnant, which caused additional pressure (AR. 59). Castillo testified she continued to work despite the pain while taking "a lot of pain medication" to provide for her children (AR. 59).

Castillo stated she knew her diagnosis would require her to stop working at a young age, but she wanted to work as long as possible (AR. 44). Castillo worked until her back went out and she could no longer stay employed (AR. 44). Castillo filed for disability benefits on March 19, 2010, and continued to work in an easier position for another month to give her employer notice she was leaving (AR. 59-60). Castillo filed for disability benefits and unemployment benefits (AR. 44). Castillo testified "several people" told her to draw unemployment because it would be the only income she received while she was seeking disability benefits (AR. 44). Castillo filled out applications for light-duty jobs, such as at Gordman's, but when she told the potential employers that she had lifting, standing, and sitting restrictions, she was not hired (AR. 45). Specifically, Castillo told potential employers she could not lift more than five pounds or stand for more than fifteen to twenty minutes without severe pain (AR. 46). Castillo said she could not sit for more than ten to fifteen minutes without pain, but could not find any sitting down jobs (AR. 47).

Castillo testified Dr. Wenzl verbally gave her job restrictions in November 2010 and in October 2011 (AR. 47, 49). Castillo explained she saw Dr. Wenzl in March 2010, then again in November 2010, when the pain "started getting more severe" (AR. 48). Castillo testified she underwent physical therapy until she was unable to pay the co-payment (AR. 49-50). Castillo was prescribed hydrocodone, 650 mg every four to six hours for back pain (AR. 50). She had no other pain medication (AR. 50). Castillo testified she would rate her pain at eight to nine, with medication, on a scale of zero to ten (AR. 51). Castillo also suffers chronic migraines, which have gotten worse over the last five years despite medication (AR. 51).

Castillo described the effects of her osteoporosis as having to be careful how she lifts and moves (AR. 61).  Castillo's spine is curving and she has lost three-quarters of an inch in height (AR. 61).  Castillo states she has mini fractures in her spine pressing on her nerves and causing her to lose sensation in the right side of her body (AR. 61). Castillo cannot sleep through the night due to pain (AR. 61).  Additionally, her neck cracks constantly causing pain and causing her migraines to become more severe (AR. 61).  Castillo testified she cannot work in a sedentary job because of the pain and increased pressure on her neck, causing headaches (AR. 62).

Castillo testified that, since June or July 2010, she consults with Dr. Severa for mental problems including bipolar disorder, adult ADHD, anxiety, and panic attacks (AR. 52, 54).  Dr. Severa provides counseling and medication (AR. 52, 54, 56).  Castillo testified she consulted with Dr. Otten in 1998, but stopped taking medication for approximately thirteen years (AR. 52).  Castillo also stopped taking medication in 2011 for four months because she could not afford the medication when she did not have insurance (AR. 57).  Castillo underwent individual therapy to regain custody of her son (AR. 53-54).  Castillo described the effects of her mental impairments worsening since she stopped working (AR. 62-63).

Anita Howell, a vocational expert (VE), testified in response to the ALJ's hypothetical questions outlining Castillo's age, education, and work experience (AR. 64-67).  The ALJ limited hypothetical individual number one to performing light, unskilled work, which would include sedentary, unskilled work (AR. 65).  Additionally, the individual could occasionally life or carry twenty pounds and frequently carry ten pounds (AR. 65).  The individual could stand, sit, or walk for six hours in an eight-hour day; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards (AR. 65).  Further, the individual is limited to routine, repetitive work that does not require extended concentration; and allows occasional social interaction, but avoids constant or intense interaction with coworkers and supervisors (AR. 65).  The VE testified individual one could not perform past relevant work (AR. 65).  However, the VE testified individual one could work in the national and regional economy in unskilled jobs at the light and sedentary levels (AR. 66-67). Specifically, individual one could function as a folding-machine operator or a production

7

assembler at the light level (AR. 66).  Individual one could function as an inspector/tester or an order clerk for food and beverage (AR. 67).

Castillo's attorney asked the VE whether an individual who is limited to a five-pound weight limit and only fifteen minutes of standing or sitting would have the ability to work (AR. 68).  The VE testified such an individual would be unable to work even at a sedentary job, which is defined as being able to lift up to ten pounds and sit six out of eight hours in a day (AR. 68).  Castillo's attorney also asked about mental limitations including some marked and extreme limitations (AR. 68-69).  The VE testified such an individual would be unable to perform competitive work (AR. 69).

## THE ALJ'S DECISION

The ALJ concluded Castillo was not disabled under the Act (AR. 12-21).  The ALJ framed the issue as whether Castillo was disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act (AR. 12).  The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or last for a continuous period of not less than twelve months (AR. 12).  **See** 42 U.S.C. § 423; 20 C.F.R. § 404.1505.

The ALJ must evaluate a disability claim according to the sequential five-step analysis established by the Social Security regulations.  **See** 20 C.F.R. § 404.1520(a)-(f); *Phillips v. Astrue*, 671 F.3d 699, 701 (8th Cir. 2012).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  More specifically, the ALJ examines:

> [A]ny current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience.  **See** 20 C.F.R. § 404.1520(a).  If the claimant suffers from an impairment that is included in the listing of presumptively disabling

> impairments (the Listings), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy. A claimant's residual functional capacity is a medical question.

**Singh v. Apfel**, 222 F.3d 448, 451 (8th Cir. 2000) (internal citations omitted). "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled." **Pelkey v. Barnhart**, 433 F.3d 575, 577 (8th Cir. 2006) (citation omitted); see **Kluesner v. Astrue**, 607 F.3d 533, 536 (8th Cir. 2010).

In this case, the ALJ followed the appropriate sequential analysis. At step one, the ALJ noted Castillo did not engage in substantial gainful activity since April 15, 2010, her alleged onset date (AR. 14). At step two, the ALJ determined Castillo had the following severe impairments as defined by Social Security regulations: "major depressive disorder without psychotic features, panic disorder without agoraphobia, dependent personality disorder, autoimmune thyroid disease, disorder of the lumbar spine, and osteoporosis" (AR. 15). The ALJ determined the above mentioned severe impairments cause significant limitations on Castillo's ability to do basic work related activities (AR. 15). Additionally, the ALJ found Castillo has a severe mental impairment that causes more than mild functional limitations (AR. 15).

At the third step, the ALJ determined that although Castillo has some symptoms relating to physical disorders that limit her ability to perform a full range of work, the necessary elements and severity were not sufficiently documented in the record to meet or equal the requirements of any physical impairments listed in the Act (AR. 15). Accordingly, the ALJ concluded Castillo does not have an impairment or combination of impairments that meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 419.926) (AR. 15-16). The ALJ concluded Castillo's mental

9

impairments result in a mild restriction in activities of daily living (AR. 15). The ALJ determined Castillo has moderate difficulties in social functioning and mild difficulties in concentration, persistence, or pace, but has suffered no episodes of decompensation of extended duration (AR. 16). Before proceeding to step four of the sequential evaluation process, the ALJ determined Castillo's ability to perform work-related functions, or Residual Functional Capacity (RFC), is limited to the following:

> light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant is limited to unskilled work that is routine and repetitive within SVP of 1-2. The claimant can occasionally lift 20 pounds and frequently lift 10 pounds. She can stand, sit, and walk 6/8 hours a day. She can perform postural duties occasionally and should avoid exposure to hazardous [sic]. She can perform unskilled work that does not require extended concentration. Socially, she should occasionally avoid constant or intense interaction with coworkers and supervisors, but can handle occasional social interaction.

(AR. 16).

The ALJ found Castillo's medically determinable impairments could reasonably be expected to cause Castillo's alleged symptoms; however, the ALJ found Castillo's statements regarding the intensity, persistence, and limiting effects of such symptoms were not credible to the extent they conflict with the RFC (AR. 17). The ALJ determined Castillo was not fully credible due to inconsistencies in the record evidence (AR. 19). Specifically, Castillo worked or held herself out to be able to work and parent three young children and a teenager, while also alleging she was severely limited in her ability to work in order to attain disability benefits (AR. 19). Additionally, Castillo failed to treat her mental and physical conditions as she was advised by her health care professionals, going months without any treatment (AR. 19). Finally, the medical evidence does not support Castillo's stated limitations such as the five-pound lifting limitation, which is out of proportion to the objective evidence (AR. 19).

The ALJ gave no weight to Dr. Severa's opinions based on Dr. Severa's apparent misunderstanding of terms and limited treatment relationship (AR. 19). Specifically, Dr. Severa completed a check marked form marking statements which were inconsistent with Castillo's circumstances after the first visit, relied on "patient

10

history" to determine Castillo could only work one hour a day, and stated he had treated Castillo once a month without supporting progress notes (TR. 19).

The ALJ gave little weight to Dr. Wenzl's October 26, 2010, medical source statement (AR. 18). The ALJ's assessment of Dr. Wenzl's opinion was based on Dr. Wenzl's minimal treatment of Castillo prior to the statement and a treatment gap of one year, from October 2010 to November 2011 (AR. 18). The ALJ also relied on the fact that during the treatment gap, a hip bone scan "was in the normal range" (AR. 18). Additionally, successive exams have shown some tenderness and reduced range of motion, however there were no quantified functional limitations resulting from the symptoms (AR. 18). The ALJ found inconsistencies between Dr. Wenzl's opinion and Castillo's treatment notes; for example, Dr. Wenzl stated Castillo's scan results were "not in the osteoporotic range" with some swelling but no instability, yet he prescribed a walker, and Dr. Wenzl opined Castillo could not work at a time she was actually working (AR. 18). The ALJ assessed Dr. Wenzl's December 12, 2011, letter to be of similar content to the October 26, 2010, statement (AR. 18 (**citing** AR. 446 as Exhibit 20f)). Finally, the ALJ found the December 12, 2011, letter to be inconsistent with Dr. Wenzl's prior opinion and contemporaneous progress notes and he gave a conclusory opinion as to the ultimate issue to be decided by the Commissioner (AR. 18).

At step four of the sequential evaluation process, the ALJ determined Castillo is unable to perform her past relevant work as a production worker at the medium exertional range (AR. 20). The ALJ noted Castillo was forty years old on the alleged disability onset date, which qualifies Castillo as a younger individual under 20 C.F.R. § 404.1563 (AR. 20). The ALJ noted Castillo has at least a high school education and is able to communicate in English (AR. 20).

At the final step in the process, the ALJ determined because Castillo could perform some unskilled light labor, Castillo was not disabled (AR. 22). The ALJ determined jobs exist in significant numbers in the national economy that Castillo can perform (AR. 20-21). The ALJ relied upon the VE's testimony finding a person of Castillo's age, education, work experience, and RFC could perform light, unskilled work as a light folding machine operator, production assembler, and inspection packager (AR. 20-21).

## STANDARD OF REVIEW

A district court is authorized jurisdiction to review a decision to deny disability benefits according to 42 U.S.C. § 405(g). A district court is to affirm the Commissioner's findings if "supported by substantial evidence on the record as a whole." ***Young v. Astrue***, 702 F.3d 489, 491 (8th Cir. 2013). Substantial evidence is defined as less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision. **See *Jones v. Astrue***, 619 F.3d 963, 968 (8th Cir. 2010); **see also *Minor v. Astrue***, 574 F.3d 625, 627 (8th Cir. 2009) (noting "the 'substantial evidence on the record as a whole' standard requires a more rigorous review of the record than does the 'substantial evidence' standard"). "If substantial evidence supports the decision, then [the court] may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." ***McNamara v. Astrue***, 590 F.3d 607, 610 (8th Cir. 2010). "[I]t is the court's duty to review the disability benefit decision to determine if it is based on legal error." ***Nettles v. Schweiker***, 714 F.2d 833, 835-36 (8th Cir. 1983). The court reviews questions of law de novo. **See *Miles v. Barnhart***, 374 F.3d 694, 698 (8th Cir. 2004). Findings of fact are considered conclusive if supported by substantial evidence on the record as a whole. **See *Nettles***, 714 F.2d at 835; ***Renfrow v. Astrue***, 496 F.3d 918, 920 (8th Cir. 2007). Furthermore, "[the court] defer[s] to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." ***Pelkey***, 433 F.3d at 578 (**quoting *Guilliams v. Barnhart***, 393 F.3d 798, 801 (8th Cir. 2005)).

## DISCUSSION

Castillo argues the ALJ improperly discounted Dr. Wenzl's opinions when the ALJ established Castillo's RFC and evaluated Castillo's symptoms and limitations. **See** Filing No. 14 - Brief p. 1. Specifically, Castillo argues the ALJ misinterpreted the bone scan results thereby substituting her own judgment for that of the medical expert, Dr. Wenzl, whose opinions she discredited. *Id.* at 4.

The ALJ weighs and evaluates the medical opinions when making a determination. Under the regulations, the ALJ must determine the weight to give a

particular source's testimony based on a set of criteria. The ALJ is to consider whether there was an examining or treating relationship; the length, frequency and nature of any treatment; whether the medical opinions are supported by objective and other evidence; the consistency of the medical opinion with the record as a whole; and medical specialization of the doctor giving the opinion. 20 C.F.R. § 404.1527(d); SSR 96-2p. "A treating physician's opinion is given controlling weight if it 'is well supported by medically acceptable clinical and laboratory diagnostics techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (**quoting** *Tilley v. Astrue*, 580 F.3d 675 (8th Cir. 2009)); **see** 20 C.F.R. § 404.1527(d)(2). An ALJ may discount a treating source's opinion if such opinion is inconsistent with the source's clinical treatment notes. *Davidson*, 578 F.3d at 843. "[The court] will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where 'other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Choate*, 457 F.3d at 869 (**quoting** *Reed v. Barnhart*, 399 F.3d 917, 920-21 (8th Cir. 2005)). Further, "a treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements." *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir. 2004). Specifically, the ALJ may discount medical opinions regarding limitations that are at odds with the same medical source's progress notes and unsupported by medically acceptable data. **See** *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). Additionally, a treating source's statement that a claimant is "disabled" or "unable to work," does not carry "any special significance," for the Commissioner who makes the ultimate determination of disability. *Davidson*, 578 F.3d at 842 (**citing** 20 C.F.R. § 416.927(e)(1), (3)). The regulations require "that the [ALJ] will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2p; **see** 20 C.F.R. § 404.1527(d)(2). Castillo appears to dispute whether the ALJ properly considered Dr. Wenzl's opinions in accordance with SSR 96-2p.

The ALJ did not give significant weight to Dr. Wenzl's opinions, for example the opinions Castillo was unsuitable for employment and severely limited in her ability to lift, sit, walk, and stand. Although Dr. Wenzl was Castillo's long-time primary care physician, Castillo underwent minimal treatment and had a year-long treatment gap during the relevant period. Moreover, Dr. Wenzl's opinions given on the assessment forms and in the final letter are inconsistent with his other opinions and contemporaneous progress notes. One of the inconsistencies include the severity of Castillo's lifting restrictions (no more than five pounds since April 2010) and whether the doctor's observations justified the opinions (Castillo reported no weakness in her upper extremities in March and November 2010). Additionally, Dr. Wenzl failed to provide quantified functional limitations based on Castillo's symptoms or based on acceptable clinical and laboratory diagnostic techniques. Similarly Dr. Wenzl relied on Castillo's subjective reports of pain. Castillo's bone scans showed only a slight worsening of her condition between the time she was working (2007 through March 2010) and Dr. Wenzl's opinion Castillo was unsuitable for any work (April 2010 through 2011). The bone scans also showed Castillo's hip scores were generally in the normal range and Dr. Wenzl observed Castillo had a normal gait and no signs of instability, yet Dr. Wenzl prescribed a wheeled walker at Castillo's request.

In this case, the ALJ gave examples where Dr. Wenzl's opinions were contrary to other evidence in the record including Dr. Wenzl's own progress notes and other opinions. The ALJ noted and explained the weight given to each of Dr. Wenzl's opinions. The ALJ did not substitute her own interpretation of the raw medical data or second guess the treatment decisions as alleged by Castillo, but acknowledged the treatment gaps, apparent inconsistencies, and lack of medical or empirical justification for Dr. Wenzl's proffered conclusory statements and opinions. **See *Hurd v. Astrue*** , 621 F.3d 734, 738 (8th Cir. 2010) (noting it is the claimant's burden, rather than the Commissioner's, to prove the claimant's RFC). The ALJ's conclusions are supported in the record.

## CONCLUSION

For the reasons stated herein, the court concludes the ALJ's decision, which represents the final decision of the Commissioner of the SSA, is supported by substantial evidence in the record as a whole and should not be reversed or remanded. Accordingly, the Commissioner's decision is affirmed.

**IT IS ORDERED**:

The Commissioner's decision is affirmed, the appeal is denied, and judgment in favor of the defendant will be entered in a separate document.

Dated this 26th day of November, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge